**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,              No   CR  04-0189  VRW

12                  Plaintiff,                  ORDER

13

14                  v

15  REY MARTINEZ,

16                  Defendant.
    _____/

17

18

19          Defendant Rey Martinez is charged in a second superseding

20  indictment with two counts of possession with intent to distribute

21  3, 4-methylenedioxymethamphetamine (MDMA) in violation of 21 USC §§

22  841(a)(1) and 841(b)(1)(C).  Doc #17.  Martinez moves to suppress

23  evidence of the contraband on the grounds that (1) the warrant

24  authorizing the underlying search was not supported by probable

25  cause, (2) the warrant was not validly executed and (3) the search

26  exceeded the scope of the warrant.  Doc #32.  For reasons discussed

27  below, Martinez's motion is DENIED.

28  //

1

2

I

A

3          On May 4, 2004, San Francisco Police Department (SFPD)

4   Officer William Braconi sought and obtained a search warrant from a

5   California superior court judge authorizing the search of

6   defendants Rey Martinez and Jordan Grothe (the latter of whom is

7   not a party to the present motion) and the premises of 60 Landers

8   Street, apartment 1, in San Francisco.  Doc #52 (Maes Decl), Ex 2

9   at 1.  The supporting affidavit submitted by Officer Braconi, id at

10  3-10, represented the following facts:

11         Officer Braconi has extensive training and experience in

12  undercover narcotics operations and has investigated over 50 MDMA

13  traffickers.  During April 2004, Officer Braconi met with a

14  confidential informant (CI) regarding dealers of MDMA and

15  methamphetamine in San Francisco.

16         The CI told Officer Braconi that he/she dealt with an

17  MDMA dealer known as "Rey Martinez," a United States citizen who

18  primarily resides in Amsterdam, Netherlands.  According to the CI,

19  Martinez told the CI that he came to the United States for one week

20  a month to distribute large amounts of MDMA.  Martinez offered to

21  sell MDMA to the CI.  Although the volume and price offered has

22  been redacted from the copy of the affidavit submitted with the

23  court, Officer Braconi knew through his experience that the price

24  offered by Martinez "is usually reserved for people buying in bulk

25  and someone who is able to sell at this price is usually obtaining

26  the product directly or very close to the source of production."

27  Id at 5.  Further, Officer Braconi knew "through his training and

28  experience that Amsterdam, Holland is known internationally as a

United States District Court

For the Northern District of California

2

place of origin for MDMA."  Id.

Officer Braconi corroborated the CI's familiarity with Martinez as follows:  The CI provided Officer Braconi two phone numbers by which the CI contacted Martinez.  One number corresponded to a wireless telephone number in the United States. Officer Braconi was able to confirm that the subscriber for this telephone line was one Rey Martinez with a birth date of December 16, 1964.  Based on this information, Officer Braconi obtained a photograph of Rey Martinez from the California Department of Motor Vehicles (DMV).  When shown the DMV photo, the CI identified the subject as the individual known as Rey Martinez who had in the past sold MDMA to the CI.

The second telephone number corresponded to a telephone line in Amsterdam.  Although Officer Braconi could not verify the subscriber information for this line, he did listen to a phone conversation initiated by the CI to this number.  The CI greeted the man on the other end as "Rey."  The CI asked if he/she could increase the number of "pills" (known to Officer Braconi as code for MDMA tablets) in his/her order.  The man on the other end responded "no problem" and told the CI that he would be in San Francisco during the first week of May 2004.  The CI later confirmed that he/she recognized the voice on the other end of the conversation as that of Rey Martinez.

Subsequent to this conversation, the CI spoke again with Rey Martinez, at which time Martinez told the CI that Martinez could provide the CI with an undisclosed number of pills of MDMA and that Martinez would be arriving in San Francisco from Amsterdam on May 5, 2004.  Martinez further told the CI that if the CI wanted

**United States District Court**
For the Northern District of California

1  MDMA prior to Martinez's arrival from Amsterdam to contact

2  Martinez's partner "Jordan" and provided the CI with Jordan's

3  telephone number.  Officer Braconi independently confirmed that the

4  subscriber for this telephone number was one Jordan Grothe, who

5  resided at 60 Landers Street, apartment 1, in San Francisco.

6       "Within ten days of May 1, 2004," Officer Braconi

7  conducted a controlled "buy/walk" between the CI and Jordan.  Id at

8  7.  Maintaining visual contact with the CI, Officer Braconi, along

9  with Officer Elmore, observed the CI enter 60 Landers Street.  The

10  CI returned with an undisclosed number of pills, later confirmed to

11  be MDMA, which the CI stated he obtained from Jordan.

12      Based on the foregoing, the superior court judge signed a

13  warrant on May 4, 2004, authorizing the search of the persons of

14  Rey Martinez and Jordan Grothe and the premises of 60 Landers

15  Street, apartment 1, in San Francisco, California.  In addition to

16  MDMA, related paraphernalia and documentary evidence, the warrant

17  authorized officers to search for and seize the following items:

18              All articles of personal property tending to
                establish and document sales of MDMA * * *,
19              consisting in part, of articles of personal property
                tending to establish the identity of persons in
20              control of premises, vehicles, storage areas or
                containers located at, or nearby, or related to the
21              subject premises [(60 Landers Street, apartment 1)]
                where [MDMA] may be hidden.  All vehicles, storage
22              areas or containers located at, or nearby, or
                related to the subject premises where MDMA * * * may
23              be hidden; all articles of personal property tending
                to establish the location of such premises,
24              vehicles, storage areas or containers where MDMA
                * * * may be found or secreted, consisting of and
25              including but not limited to, utility bills and
                receipts, rent receipts, canceled mail envelopes and
26              keys.

27  Id, Ex 2 at Ex A.

28  //

4

**United States District Court**
For the Northern District of California

**B**

Except as otherwise noted, the following facts are taken from incident reports generated by SFPD, id, Ex 3 at MG025-28, and the Drug Enforcement Administration (DEA), id, Ex 6 at MG033-41, which have been attested to by Officer Braconi and DEA Task Force Agent (TFA) Maes, Maes Decl ¶2(f); id, Ex 1 (Braconi Decl) ¶3:

On May 4, 2004, Officer Braconi contacted TFA O'Malley (also a member of the SFPD Airport Bureau), requesting assistance in locating Rey Martinez. At approximately 10:00 am on May 5, 2004, TFA O'Malley informed Officer Braconi that he had located a "Rey Martinez" on board a flight from Frankfurt, Germany to San Francisco International Airport (SFIA). At approximately 11:50 am, TFA O'Malley notified Officer Braconi that the plane carrying Rey Martinez had landed and broadcast a description of Rey Martinez as he exited the plane.

At some point, apparently, United States Customs and Border Protection (CBP) was apprised of Martinez's impending arrival in San Francisco. A "one-day lookout" was placed on Martinez, whereby Martinez was to be subjected by CBP agents to a "routine exam for narcotics" but was "not [to be] alert[ed]." Doc #65 (Romero Decl) ¶1 & Ex 1. According to Martinez, upon arriving at SFIA, he was directed by a customs agent to "special line" where two agents who were "apparently waiting for" him questioned him, "thoroughly searched and examined" his luggage and then searched his person. Doc #63 (Martinez Decl) ¶¶3-8. No contraband was found and Martinez was allowed to exit the airport terminal.

Recognizing Martinez from the DMV photo, Officer Braconi and the surveillance crew he had assembled ascertained Martinez

outside the airport.  Martinez entered an orange and yellow taxicab, which the officers followed to 60 Landers Street, Martinez's destination.  Approximately two hours later, the officers observed Martinez exit 60 Landers Street and enter a yellow cab.

The officers followed the yellow cab to a Mail Boxes Etc store, which Martinez entered while the cab waited outside. Approximately one minute later, he exited with four "white large envelope packages" in tow and got back in the cab.  At that point Officer Braconi instructed the police units on the scene to detain Martinez and serve the search warrant.  After directing the cab to stop, Inspector Keane detained Martinez while Officer Marte seized the four white packages, which were apparently on the rear seat of the cab next to where Martinez had been sitting.  Martinez spontaneously stated, "those aren't mine."  All four of the packages were addressed from "VSL Investments" in Amsterdam to "Mr R Martinez" in San Francisco.  TFA Maes opened the four envelopes, each of which contained a magazine with the pages hollowed out. Located in these hollowed-out areas were suspected MDMA tablets bearing a "Superman" logo arranged in a single layer and covered with clear cellophane.  Approximately 2400 MDMA tablets were contained in the four magazines.

Martinez moves to suppress evidence of the 2400 MDMA tablets, arguing that (1) the search warrant was not supported by probable cause and, in any event, (2) the warrant was not validly executed and (3) the search of the four white envelopes was not authorized by the warrant and therefore constitutionally impermissible.  The court addresses these arguments in turn.

United States District Court

For the Northern District of California

II

The Fourth Amendment requires that warrants issue only upon a showing of probable cause.  When, as in this case, a warrant designates more than one person or place to be searched, there must be "sufficient probable cause to justify its issuance as to each person or place named therein."  <u>Greenstreet v County of San Bernardino</u>, 41 F3d 1306, 1309 (9th Cir 1994) (quotations omitted).

"[S]o long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more."  <u>Illinois v Gates</u>, 462 US 213, 236 (1983) (quotations and alterations omitted); see also <u>United States v Martinez-Garcia</u>, 397 F3d 1205, 1217 (9th Cir 2005) ("Probable cause requires a fair probability, but not a certainty, that a search would yield evidence of a crime.").  A magistrate judge's finding of probable cause to issue a search warrant is reviewed for clear error.  <u>United States v Nielsen</u>, 371 F3d 574, 579 (9th Cir 2004).  Even if a reviewing court concludes that the magistrate erred in finding probable cause, suppression is not warranted if officers executing the warrant relied in good faith upon its validity.  <u>United States v Leon</u>, 468 US 897 (1984).

Martinez argues that there was no probable cause to believe that any of the items to be seized under the warrant would be on Martinez's person.  Martinez's argument appears to comprise two parts.  First, Martinez contends that the affidavit did not establish probable cause to believe that MDMA or other items seizable under the warrant would be on his person at any time.  Second, Martinez contends there was no probable cause to believe that such items were on his person at the time the warrant issued.

7

**United States District Court**
For the Northern District of California

**A**

1    Martinez argues that the supporting affidavit indicates

2 neither that distributors of MDMA regularly possess MDMA on their

3 person nor that Martinez regularly possessed MDMA on his person and

4 therefore did not provide a substantial basis for believing that

5 Martinez would be in possession of MDMA.

6    "[I]nterpreting a search warrant in the proper

7 commonsense and realistic fashion may result in the inference of

8 probable cause to believe that criminal objects are located in a

9 particular place to which they have not been tied by direct

10 evidence." United States v Valenzuela, 596 F2d 824, 828 (9th Cir

11 1979) (internal citation and quotations omitted); see also United

12 States v Spearman, 532 F2d 132, 133 (9th Cir 1976).  Thus, the

13 affidavit's failure to recite any instance in which MDMA could be

14 linked to Martinez's person through direct observation by either

15 Officer Braconi and the CI is not dispositive.

16    In this case, the CI, whose reliability had been

17 established through corroboration by Officer Braconi, stated that

18 he/she "deals" (that is, had dealt and continued to deal) with an

19 MDMA trafficker known as Rey Martinez, Maes Decl, Ex 2 at 5, who

20 had told the CI that he could "provide" an undisclosed number of

21 pills of MDMA upon his arrival in San Francisco, id at 6.  Combined

22 with "a declaration that drug traffickers commonly carry related

23 evidence on their person," fresh information about Martinez's drug

24 activity would "allow[] a reasonable inference that evidence was

25 likely to be kept on [Martinez]'s person." United States v Elliot,

26 322 F3d 710, 717 (9th Cir 2003); cf Spearman, 532 F2d at 133

27 (holding that the magistrate properly inferred probable cause to

search a vehicle).

As already noted, Martinez contends that the former of these two ingredients for such an inference (a declaration that MDMA traffickers normally carry drugs or related evidence on their person) is lacking. Be that as it may, Officer Braconi did state in the affidavit that "[b]ased on his training and experience and the information supplied in th[e] affidavit, it [was his] expert opinion that" MDMA and related evidence were located at the 60 Landers Street and "on the person" of Rey Martinez. Maes Decl, Ex 2 at 10. "The opinion of the affiant, an experienced narcotics officer, that there would be [MDMA] on [Martinez]'s person * * * is but a particularized restatement" of the type of opinion that Martinez contends is absent here. <u>Valenzuela</u>, 596 F2d at 828.

Accordingly, the issuing judge properly inferred probable cause to believe that Martinez would have MDMA on his person while in San Francisco.

B

Regardless whether the affidavit establishes probable cause to believe that Martinez would have MDMA on his person after arriving in San Francisco, Martinez argues that there was no probable cause to believe that he had MDMA or other seizable items on his person at the time the warrant issued.

As Martinez correctly argues, as a general matter, the facts supporting an application for a search warrant "must be sufficient to justify a conclusion that the property which is the object of the search is probably on the person or premises to be searched <u>at the time the warrant is issued</u>." <u>United States v</u>

<u>Hendricks</u>, 743 F2d 653, 654 (9th Cir 1984) (emphasis added) (quotations and alterations omitted).  The purpose of this general rule is to ensure that judicial — not law enforcement — officers make "the determination that probable exists to believe that the objects are currently in the place to be searched."  Id at 655.

Based on (1) the CI's statement that Martinez lived in Amsterdam but traveled to San Francisco once a month to sell MDMA, (2) Officer Braconi's opinion that, based on the price at which Martinez had offered to sell MDMA, he was obtaining it at or near the source of production and (3) Officer Braconi's understanding that Amsterdam is an internationally significant source of MDMA, it would have been reasonable for the issuing judge to find probable cause to believe that the MDMA allegedly trafficked by Martinez and his co-defendant originated in Amsterdam and that Martinez was responsible for the carriage of that MDMA from Amsterdam to San Francisco.  Martinez's argument to the contrary, Doc #57 (Reply) at 4, ignores the nexus between Amsterdam and MDMA and depends on the type of technical, rather than commonsense, reading of the affidavit that the Supreme Court has consistently eschewed.  See, e g, <u>United States v Ventresca</u>, 380 US 102, 108 (1965).

Because probable cause existed to believe that (1) Martinez was responsible for the carriage of MDMA from Amsterdam to San Francisco and (2) Martinez would arrive in San Francisco from Amsterdam on May 5, 2004, and because it would have reasonable to infer that Martinez was en route at the time the warrant issued, there was a basis for concluding that Martinez had MDMA on his person at the time the warrant issued.

//

United States District Court

For the Northern District of California

10

**United States District Court**

For the Northern District of California

Even if the length of the chain of inferences necessary to arrive at this belief casts doubt on the existence of probable cause contemporaneous with the warrant's issuance, two considerations weigh against granting suppression on this ground.

First, as noted, the policy underlying the requirement that probable cause to believe that the things to be seized are on the person to be searched at the time the warrant issues is that law enforcement officers should not make the determination of probable cause in the first instance. The court has already concluded that there was probable cause to believe that Martinez would have MDMA or related evidence on his person while he was in San Francisco. And only in San Francisco could the warrant be executed. Because there was probable cause to believe that Martinez would be in possession of MDMA or related evidence during the only time period in which the warrant could be executed, the vice of the prospective search warrant is not implicated in this case. Cf <u>United States v Goff</u>, 681 F2d 1238, 1240 (9th Cir 1982) (holding that search warrant was valid notwithstanding that persons to be searched and items to be seized were en route to, but were not yet within, the judicial district at the time the warrant issued because under those circumstances the court's concern was "that probable cause exist at the time of the search").

Second and dispositive is <u>Leon</u>. Even if it is debatable whether there was a fair probability that a search of Martinez at the time the warrant issued would have borne fruit, officers could have believed in good faith in the warrant's validity. Indeed, the case upon which Martinez principally relies so concluded. See <u>Hendricks</u>, 743 F2d at 654-56 (holding a search warrant invalid as

prospective but nonetheless affirming denial of suppression based on <u>Leon</u>).  Neither the record nor the warrant indicate any reason for the court to reach a contrary conclusion this case.

III

Alternatively, Martinez argues that the warrant was not validly executed outside the Mail Boxes Etc because (1) the warrant had already been executed at SFIA and (2) probable cause had dissipated.  The court addresses these arguments in turn.

A

As a "general rule," a search warrant "authorizes only one search."  <u>United States v Keszthelyi</u>, 308 F3d 557, 568-69 (6th Cir 2002).  Thus, "[o]nce the execution of a warrant is complete, * * * the authority conferred by the warrant terminates."  Id at 571.  But where the second search is in fact a continuation of the first, two intrusions separated in time are proper pursuant to a single warrant.  See <u>United States v Kaplan</u>, 895 F2d 618, 623 (9th Cir 1990).

CBP's search of Martinez at SFIA does appear, as Martinez suggests, to have been prompted by information shared by Officer Braconi with TFA O'Malley regarding the particularized suspicion that Martinez would be in possession of contraband.  But, significantly, the authority of CBP agents to search Martinez at SFIA did not depend upon the search warrant.  "Routine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant * * *."  <u>United States v Montoya de Hernandez</u>, 473 US 531, 538

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

(1985); see also 19 USC § 1582 ("[A]ll persons coming into the United States from foreign countries shall be liable to detention by authorized officers or agents of the [United States] Government * * *."); United States v Okafor, 285 F3d 842, 845 (9th Cir 2002) ("When agents at an international airport search a traveler entering the United States from a foreign country, and the bags or containers entering with them, the agents are properly minding the borders of the United States."). Although pat downs and strip searches require "minimal" or "real" suspicion, respectively, United States v Vance, 62 F3d 1152, 1156 (9th Cir 1995), Martinez neither suggests that such an intrusive search occurred, see Martinez Decl ¶8, nor disputes the existence of the minimal quantum of suspicion necessary to justify such a search.

In sum, the authority of CBP agents to search Martinez or his luggage at SFIA in no way depended on the search warrant in this case. Under these circumstances, and absent binding authority to the contrary, the court holds that the search of Martinez and his luggage at SFIA was not a search pursuant to, and therefore did not constitute execution of, the warrant. The search that yielded the evidence Martinez seeks to suppress cannot be challenged on this basis.

B

At oral argument, Martinez suggested that even if the search warrant was not executed at SFIA, because SFPD officers knew that Martinez had been subjected to a search of his person and luggage by CBP without incident, probable cause to believe that Martinez would have contraband on his person dissipated and,

13

accordingly, the warrant's authorization to search his person expired.  In a similar vein, Martinez argues that the officers unreasonably delayed executing the warrant, which, according to Martinez, commanded immediate execution.

        As an initial matter, it does not appear the issuing judge conditioned the warrant on its immediate execution.  The only reference to immediacy appears in the final paragraph of Officer Braconi's affidavit, where he concludes by "pray[ing] that a search warrant be issued * * * commanding the immediate search of" Martinez, Grothe and 60 Landers Street, apartment 1.  Maes Decl, Ex 2 at 10.  The warrant itself simply commands the search without temporal limitation and requires that seized items be returned to the court "forthwith."  Id at 1.

        In any case, although the Supreme Court has not specifically so held, the Fourth Amendment likely imposes limitations on the time period within which a warrant must be executed, for "[i]f the police were allowed to execute the warrant at leisure, the safeguard of judicial control over the search which the [F]ourth [A]mendment is intended to accomplish would be eviscerated."  United States v Bedford, 519 F2d 650, 655 (3d Cir 1975); cf FRCrP 41(e)(2) (requiring that a federal search warrant command the officer to "execute the warrant within a specified time no longer than 10 days").  Another reason to require prompt execution of warrants is "to lessen the possibility that the facts upon which probable cause was initially based do not become dissipated."  United States v Nepstead, 424 F2d 269, 271 (9th Cir 1970).

//

United States District Court

For the Northern District of California

But it is also "desirable that police be given reasonable latitude to determine when a warrant should be executed." Id.  In this regard, "[t]o permit agents to make the judgment that the averments of the affidavit are again satisfied, after a period of doubt, does not undercut the policy requiring an independent judicial determination of the existence of probable cause." United States v Dunnings, 425 F2d 836, 840-41 (2d Cir 1970) (Friendly, J), discussed with approval in Nepstead, 424 F2d at 271.  Thus, for example, when after obtaining a warrant to search the defendant's premises detectives were notified that the defendant's drug inventory had been momentarily exhausted but would soon be replenished, it was reasonable for the detectives to delay executing the warrant until drugs had been delivered to the premises eight days later.  United States v Shegog, 787 F2d 420, 421-23 (8th Cir 1986); see also United States v Harris, 255 F3d 288, 294 (6th Cir 2001) ("Probable cause is not defeated simply because an informant was unable to purchase drugs on one occasion prior to the execution of the search warrant.").  Similarly, when officers harbored doubt whether drugs were on the subject premises in the defendant's absence, it was reasonable for officers to wait until the defendant returned to execute the warrant.  Dunnings, 425 F2d at 840-41.

In this case, the warrant was executed the day after it issued and within a few hours of Martinez's arrival in San Francisco.  Based on the evidence in the record, the court does not doubt that the officers who executed the warrant were either informed or surmised that Martinez had been subjected to a personal search by CBP without incident.  And based on that knowledge, the

officers might very well have concluded that the likelihood Martinez was actually in possession of contraband at that moment was relatively slim.  But as in the cases cited above, nothing had changed in terms of the factual foundation for probable cause to issue the warrant.  Such might have been the case if, for example, probable cause to search Martinez's person was based on information that he had been observed selling MDMA in the Frankfurt airport prior to boarding his plane for San Francisco.  In fact, however, probable cause was based on (1) the CI's past dealings with Martinez, (2) Martinez's statement that he would sell MDMA to the CI upon arrival in San Francisco, (3) Officer Braconi's expert opinion that Martinez would have MDMA on his person and (4) the issuing judge's reasonable inferences.  The fact that Martinez might not have had MDMA on his person at the moment he exited SFIA does nothing to undermine these bases for probable cause.

Accordingly, the court concludes that probable cause continued until the time the warrant was executed and that any delay in executing the warrant was reasonable.


IV

Martinez next argues that the warrant did not authorize seizure and search of the four white envelopes.  Before turning to Martinez's arguments, it is appropriate to address first the government's contention that Martinez lacks standing to challenge the search of the envelopes.

//

//

//

**United States District Court**

For the Northern District of California

**A**

The government argues that Martinez had no expectation of privacy in the envelopes and therefore lacks standing to challenge the search under the Fourth Amendment.  See <u>Rakas v Illinois</u>, 439 US 128 (1978).  Specifically, the government contends that Martinez lost any expectation of privacy he might have had in the envelopes by abandoning them with the statement "those aren't mine."

Individuals may lose their expectation of privacy by disclaiming ownership.  See, e g, <u>United States v Veatch</u>, 674 F2d 1217, 1220-21 (9th Cir 1981); see also <u>United States v Jackson</u>, 544 F2d 407, 409-10 (9th Cir 1976).  Significantly, however, Martinez is charged with possession.  Although this does not automatically confer standing upon Martinez, <u>United States v Salvucci</u>, 448 US 83 (1980), the government is not free "to argue possession but deny expectation of privacy where the circumstances of the case make such positions necessarily inconsistent," <u>United States v Isaacs</u>, 708 F2d 1365, 1368 (9th Cir 1983).

To estop the government from contesting Martinez's expectation of privacy in the envelopes does not, however, relieve Martinez of his burden of establishing that he has standing to contest the legality of the search.  <u>United States v Singleton</u>, 987 F2d 1444, 1449 (9th Cir 1993).  "It [is Martinez]'s obligation to present evidence of his standing, or at least to point to specific evidence in the record which the government presented and which established his standing." <u>United States v Zermeno</u>, 66 F3d 1058, 1062 (9th Cir 1995).  In his reply memorandum, Reply at 2, and at oral argument, Martinez posited that he had an expectation of privacy in the envelopes because they were sealed and addressed to

him and sealed.  Martinez has met his burden of establishing he had
an expectation of privacy in the envelopes.

Having concluded that Martinez has standing, the court
turns to Martinez's argument that it was improper for the officers
to seize and search the envelopes.


**B**

**1**

Martinez first suggests that it was improper for officers
to pull over the yellow cab in which he was riding.  Doc #61 (Def
Supp Br) at 5.  Because the court has concluded that the warrant
was supported by probable cause (or at the very least, the officers
could have so believed in good faith), Martinez's argument must
fail.  "It is obvious that in executing the warrant, the agents
could stop the vehicle in which * * * [Martinez] was a passenger."
United States v O'Connor, 658 F2d 688, 691 (9th Cir 1981).


**2**

In order to protect the people against indiscriminate
searches pursuant to general warrants, the Warrant Clause of the
Fourth Amendment requires that warrants "particularly describe[e]
the place to be searched, and the persons or things to be
searched."  Consistent with this constitutional mandate, "[w]hen an
official search is properly authorized —— whether by consent or by
the issuance of a valid warrant —— the scope of the search is
limited by the terms of its authorization."  Walter v United
States, 447 US 649, 656 (1980).
//

United States District Court

For the Northern District of California

18

United States District Court

For the Northern District of California

1    Because the officers had recently observed Martinez enter

2    a Mail Boxes Etc store without the four envelopes and exit the

3    store with them in his possession, the officers were justified in

4    inspecting them to determine whether they fell into any of the

5    following categories of items seizable under the warrant:  (1)

6    "personal property tending to establish and document sales of

7    MDMA," (2) "containers * * * related to the subject premises [(60

8    Landers Street, apartment 1)] where [MDMA] may be hidden," or (3)

9    "canceled mail envelopes" "tending to establish the location of

10   such premises, vehicles, storage areas or containers where MDMA

11   * * * may be found or secreted."  Maes Decl, Ex 2 at Ex A.

12   Martinez advances three unpersuasive arguments why the

13   envelopes were not seizable under the warrant.  First, Martinez

14   argues that "mail that has been received but not opened is not a

15   cancelled mail envelope."  Reply at 9.  Contrary to Martinez's

16   view, it is widely understood that an envelope or stamp is

17   "canceled" when it bears a postmark that invalidates the postage

18   stamp for reuse.  See Webster's Third New Int'l Dictionary 325

19   (1981) (defining "cancel" as "to deface (a postage or revenue

20   stamp) esp[ecially] with a set of parallel lines, a postmark, or a

21   series of cuts or slits to invalidate for reuse").

22   Next, Martinez argues that the envelopes were not subject

23   to seizure because they did not tend to establish "the location of

24   such premises, vehicles, storage areas or containers where MDMA

25   * * * may be found or secreted."  In essence, Martinez argues that

26   envelopes containing MDMA do not tend to establish the location of

27   MDMA.  This argument plainly defies logic, and whatever subtle

28   distinction Martinez is attempting to draw, it is lost on the

19

United States District Court

For the Northern District of California

court.  In any event, the envelopes were each addressed to "R Martinez" and with a sender's address in Amsterdam.  Based on Officer Braconi's knowledge "through his training and experience that Amsterdam, Holland is known internationally as a place of origin for MDMA," Maes Decl, Ex 2 at 5, it would have been reasonable under the circumstances to surmise that the envelopes would tend to establish "the location of such premises, vehicles, storage areas or containers where MDMA * * * may be found or secreted."  And as discussed below, the officers had probable cause to believe that the four white envelopes actually contained MDMA.

Finally, Martinez contended at oral argument that, for purposes of the second category of seizable items listed above, in order to be "related to the subject premises," an item must have been discovered at or near the premises.  The court concludes that (1) an envelope addressed to 60 Landers Street, apartment 1, would be a container "related to" the subject premises and (2) seizing the envelopes to determine whether they were addressed to 60 Landers Street, apartment 1, would have been proper.

Seizure of the envelopes was authorized by the warrant.


C

As Martinez correctly argues, however, authorization for the officers to seize the envelopes does not establish that they were authorized to examine the envelopes' contents.  "Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy; warrantless searches of such effects are presumptively unreasonable."  United States v Jacobsen, 466 US 109, 114 (1984).

United States District Court

For the Northern District of California

<u>In general</u>, "[e]ven when government agents may lawfully seize such a package * * *, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package."  Id.  "Such a warrantless search could not be characterized as reasonable simply because, after the official invasion of privacy occurred, contraband is discovered."  Id.  Accordingly, Martinez argues that it was unreasonable under the Fourth Amendment for the officers to open the envelopes absent specific authorization in the warrant.

Further, as Martinez observes, sealed mail has long received especial protection under the Fourth Amendment.  See generally <u>United States v Van Leeuwen</u>, 397 US 249 (1970).  "<u>Whilst in the mail</u>, [letters and sealed packages] can only be opened and examined under like warrant, issued upon similar oath or affirmation, particularly describing the thing to be seized, as is required when papers are subjected to search in one's household."  <u>Ex parte Jackson</u>, 96 US 727, 733 (1878) (emphasis added).  But Martinez has not provided, nor is the court aware of, any authority for the proposition that individuals have a greater expectation of privacy in sealed mail than they do in other sealed containers once the parcel has completed its postal journey and reached its intended recipient.

The court rejects the government's contention that the warrant did in fact specifically authorize officers to search (i e, open) envelopes and other sealed containers seizable under the warrant.  The persons or places to be searched are listed on the face of the warrant; items to be seized are listed in Exhibit A attached thereto.  See Maes Decl, Ex 2.  The envelopes were covered by the latter but not the former.

United States District Court

For the Northern District of California

1    Significantly, however, there is no dispute that the four

2 white envelopes were in the yellow cab at the time they were

3 seized.  Compare Def Supp Br at 6, with Doc #60 (Gov Supp Br) at 2;

4 see also Maes Decl, Ex 4 at MG030.  This implicates the so-called

5 "automobile exception" to the warrant requirement, which dates back

6 to the Supreme Court's holding in Carroll v United States, 267 US

7 132 (1925).

8    In United States v Ross, 456 US 798 (1982), the Supreme

9 Court held that a warrantless search of an automobile under Carroll

10 could include a search of a container or package inside the car

11 when such a search was supported by probable cause:  "If probable

12 cause justifies the search of a lawfully stopped vehicle, it

13 justifies the search of every part of the vehicle and its contents

14 that may conceal the object of the search."  Id at 825.  In

15 California v Acevedo, 500 US 565 (1991), the Supreme Court

16 clarified that a warrantless search of containers within a vehicle

17 is constitutionally permissible even when officers lack probable

18 cause to search the entire vehicle so long as they have probable

19 cause to search the package located in the vehicle.  Simply put,

20 "police may search an automobile and the containers within it where

21 they have probable cause to believe contraband or evidence is

22 contained."  Id at 580.  This rule applies to containers that

23 belong to passengers as well as the driver.  Wyoming v Houghton,

24 526 US 295 (1999).

25    After the yellow cab was lawfully stopped and the

26 officers approached, the four envelopes were within plain view and,

27 as already discussed, properly seized.  After seizing the envelopes

28 from within the vehicle, officers could observe that they

United States District Court

For the Northern District of California

originated in Amsterdam and were addressed to Martinez.  TFA Maes's knowledge, obtained through his training and experience, "that drug importers involved in illegal drug trafficking often mail drugs to themselves at addresses [in] the United States in order to avoid detection at [United States] Customs," Doc #66 ¶3, coupled with probable cause to believe that Martinez had traveled to San Francisco from Amsterdam to sell MDMA, gave rise to probable cause to believe that the four white envelopes contained MDMA.  The warrantless search of the four white envelopes was therefore proper pursuant to the automobile exception.


                                    V

        In sum, Martinez's motion to suppress is DENIED.  The parties shall appear on June 20, 2006, at 10:30 am, to set a trial date.


        SO ORDERED.


_____

VAUGHN R WALKER

United States District Chief Judge

23